|144  471|
| 74a 301|

## CHARLES W. BATCHELLER *et al.*

### *v.*

## NOAH H. BATCHELLER.

*Filed at Ottawa, January* 19, 1893.

1. SPECIFIC PERFORMANCE — *of contract without valuable consideration.*  A written agreement for the conveyance of an interest in land, if made without any valuable consideration received or to be received, can not be specifically enforced.

2. SAME — *burden of proof as to consideration.*  On bill for the specific performance of a bond for a deed, which recites a money consideration, the burden of proof rests upon the defendant to establish his defense of a want of consideration for his agreement by clear and satisfactory evidence.

3. CONTRACTS — *bond for a deed — without consideration.*  Where an indebtedness is paid by the conveyance of land in Dakota, and subsequently the debtor, by a distinct agreement, gives a bond for a deed to the creditor for the conveyance of other land to indemnify him against loss on a sale of the Dakota land, the bond given under the subsequent agreement will be purely voluntary and without consideration.

4. SAME — *bond for a deed — security for existing debt.*  To show that a bond for a deed of a party's interest in an estate is, in fact, a security for a subsisting debt, it is not enough that the proof shall merely show a parol agreement to reconvey.  There must be a continuing valid indebtedness secured by it which may be enforced by the holder of the bond in an action at law.

5. When a party claims that his written contract to convey real estate was given as a security for the payment of a debt, the burden of proof will be on him to prove the fact.

6. PAROL EVIDENCE — *to establish express trust.* Parol evidence is inadmissible to establish an express trust in real estate where the statute of frauds is pleaded.

7. APPEALS AND WRITS OF ERROR — *reversing a decree for insufficient evidence.* To justify this court in reversing a decree, it must not only find that it is not sustained by a preponderance of the evidence recited in the record, but this after making due allowance for the effect of whatever there may have been peculiar in the giving of oral testimony that may have legitimately affected the credibility of the several witnesses with the chancellor.

APPEAL from the Circuit Court of La Salle county ; the Hon. DORRANCE DIBELL, Judge, presiding.

This was a bill by Noah S. Batcheller against Charles W. Batcheller and Annie Batcheller, his wife, for the specific performance of the following contract :

"We, Charles W. Batcheller and Annie Batcheller, his wife, of the county of Yankton, in the Territory of Dakota, in consideration of the sum of one thousand dollars, to us in hand paid by Noah S. Batcheller of the county of La Salle and State of Illinois, do hereby agree and bind ourselves to execute, acknowledge and deliver unto the said Noah S. Batcheller within reasonable time after the death of Wesley Batcheller, father of the said Charles W. Batcheller and Noah S. Batcheller, our quit claim deed of all the right, title and interest which I, the said Charles W. Batcheller, may or shall have in the real estate of the said Wesley Batcheller at the time of his decease ; having received from the said Noah S. Batcheller full payment for all of the real estate which we apprehend we shall become entitled to out of the estate of the said Wesley Batcheller, upon his decease, we do hereby agree to execute such deed or writings after his decease as will perfect in the said Noah S. Batcheller our title in said real estate.

"Witness our hands and seals this fifth day of July, A. D., 1879.

(Signed)     CHARLES W. BATCHELLER     [SEAL]
             ANNIE BATCHELLER          [SEAL]

"In the presence of C. J. B. Harris, T. P. Redaelli."

Appended was a certificate of acknowledgment in due form of law. The bill shows that Wesley Batcheller, father of Noah and Charles, made his last will and testament in and by which he devised to Charles and another brother a certain tract of land, which is described, and afterward died, whereby Charles became seized in fee of the undivided half of that tract; and it charges that Noah had paid Charles therefor $1000.

Answer was filed denying that Noah had paid Charles $1000 for the land — and setting up these facts — " That in the year 1872 Charles W. Batcheller became indebted to Noah S. Batcheller in the sum of $2047 or thereabouts, which was evidenced by two promissory notes, the first dated February 21, 1872, for $1687, which was executed by Charles W. and Annie Batcheller, and payable to complainant on or about the 15th day of March, 1873; the second note bearing date October 12, A. D. 1872, for $360, payable twelve months after date and executed by Charles W. Batcheller. That on or about the 11th day of April, A. D. 1879, these defendants made settlement with said Noah S. Batcheller of all indebtedness in the manner following: That complainant and defendant computed the interest and agreed that the total indebtedness, principal and interest, was a little less than $3200; that the defendant Charles W. Batcheller and wife deeded to complainant three hundred and twenty acres of land, situated in the county of Yankton, in what was then the Territory of Dakota, but now State of South Dakota, at the agreed value of $10.00 per acre, or $3200, in full settlement and payment of said indebtedness, and complainant surrendered to defendant the said two promissory notes; copy of deed annexed marked ' Exhibit A.' Answer further says defendants believed said lands would rapidly increase in value and soon become worth much more than said indebtedness, and so made known their belief in that regard to complainant, whereupon it was further agreed between complainant and defendant that all complainant wanted was full payment of said

indebtedness, and that in the event of said lands becoming more valuable, so that they were of more value and worth more than the said debt so owing by defendant to complainant, including interest at the rate of seven per cent, that then and in that case, whatever balance there might be made from the sale of said lands after paying said indebtedness should by the said Noah S. Batcheller be returned to defendant Charles W. Batcheller; and that at said time said complainant professed to believe that said lands might not increase in value, and that said Noah S. Batcheller might not receive from the same the full payment of said indebtedness with interest at seven per cent per annum, and in that connection represented to defendant that the interest of defendant Charles W. Batcheller in the estate of his father, Wesley Batcheller, on account of certain reasons then and there alleged by said complainant, would be very small, if anything; and the said complainant asked and requested of these defendants that they would give him, the said Noah S. Batcheller, as further security for said indebtedness, and for any loss that might be sustained by him, because of the failure of said land, so conveyed to him, to increase in value from year to year, such interest as this defendant, Charles W. Batcheller, might have in the estate of his father, the said Wesley Batcheller; this in further security for any loss that complainant might so sustain. And accordingly it was agreed between complainant and these defendants that some instrument which in effect would be a mortgage lien upon such interest as the defendant Charles W. Batcheller might have in the estate of his father, should be executed as such security for any possible loss which might accrue to the said Noah S. Batcheller in the way above recited; and accordingly, in order to secure said Noah S. Batcheller against any possible loss that might arise in the manner above stated, the agreement as before recited was executed. The answer further states that said agreement was intended and designed by these defendants and by the complainant to be held

only as having the force and effect of a mortgage lien upon such interest as the defendant Charles W. Batcheller might have in the estate of his father, to secure any possible loss that might accrue to complainant, on account of a failure of said land so conveyed to complainant to rise in value as fast as the interest on said indebtedness might accumulate, as above stated; denies any other consideration of any kind or character for said contract. Charges that said lands so conveyed to complainant have largely increased in value, and that they are worth to day $25 per acre, and will sell for that amount on the market; that their real value to day is about $8000, which far exceeds said indebtedness and interest thereon to date; that said complainant has, therefore, suffered no loss, but has received much more than his just and fair due for and on account of said loan ; that no contingent loss has occurred, and that, therefore, said contract is without any consideration whatever.

The defendants Charles W. and Annie Batcheller also filed a cross-bill, setting up the same facts alleged in their answer, and praying for an account and that the contract be cancelled as a cloud upon their title.

Messrs. REEVES & BOYS, for the appellants.

Messrs. SNYDER & STEAD, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court :

The burden was upon appellants to prove that this agreement was in fact a security for a subsisting indebtedness. It is not enough that the proof shall merely show a parol agreement to reconvey ; there must be a continuing valid indebtedness secured by it, which may be enforced by appellee in an action at law, or it is not a mortgage, whatever else it may be. *Fisher* v. *Green,* 142 Ill. 80 ; *Freer* v. *Lake,* 115 id. 662 ; *Sutphen* v. *Cushman,* 35 id. 186 ; 3 Pomeroy's Equity (2d ed.), sec. 1195, note 1.

The agreement here recites that Charles W. and Annie Batcheller have been paid by Noah S. Batcheller $1000, in consideration whereof they undertake to make the conveyance. And it again recites that, " having received from Noah S. Batcheller full payment for all of the real estate '' which Charles W. and Annie " apprehend they shall become entitled to out of the estate of the said Wesley W. Batcheller upon his decease,'' they do thereby agree to execute deed, etc. Noah S. Batcheller's testimony is in conformity with this recital. He shows a previous indebtedness which, as will hereafter be seen, is admitted by Charles W., and that Charles W. made conveyance of certain lands in Dakota, and executed this agreement in payment and satisfaction of that indebtedness.

Charles W., in his testimony, disagrees with this testimony only in saying that the agreement was not made in satisfaction of any part of the indebtedness. He says the indebtedness was paid and its evidence surrendered to him, and a mortgage securing the major part of it cancelled of record before this agreement was made, and that this agreement was subsequently made to protect Noah S. against loss on account of what he had accepted in payment of the indebtedness, namely, certain lands in Dakota.

He testified: " On the 5th day of July, 1879, I was the owner of the W. ½ of the S. E. ¼ and the E. ½ of the S. W. ¼ of section 5, and the S. W. ¼ of section 9, all in town 93, range 54, in the county of Yankton, then Territory of Dakota, 320 acres. I remember making my brother, Noah S. Batcheller, a deed of this land. At that time I owed my brother $2047 principal, and with the interest added it lacked $8.55 of being $3200. Two notes, marked Exhibits B and C, shown witness. These are the notes representing the indebtedness which I owed my brother. I was not owing my brother any money at any time other than what was evidenced by these two notes. We made a settlement of this indebtedness on or about the 5th day of July, A. D. 1879. We computed the interest and

arrived at an agreement that the amount that was owing on these notes was $8.55 less than $3200. We agreed to figure these notes at seven per cent.

"Exhibit B. Note for $360. Dated October 12, 1872. Executed by C. W. Batcheller, payable to the order of N. S. Batcheller, twelve months after date, interest ·10 per cent. Endorsed on back as follows: 'Paid in full, July 5, 1879.' Exhibit C. Promissory note, dated February 21, 1872. Executed by C. W. Batcheller and Annie Batcheller, for $1687, payable to the order of N. S. Batcheller on or before the 15th day of March, 1873. Endorsed on back as follows: 'Paid in full July 5th, 1879.'

"I took the notes up at that time. At that time I paid these notes in property, the half section of land described in the deed, marked Exhibit A, and the notes were surrendered to me. The transaction took place in the office of C. J. B. Harris, in Yankton, Dakota. He is an attorney and real estate agent. Noah offered to settle at that time at seven per cent interest if I would pay him cash, and I started for Mr. Edmund's bank; as we came to the corner across the street from the bank, he says: 'Stop; you have gone far enough. I will take part of your land.' Saying that he gave me the benefit of my intentions in settling as though I had given him cash. This occurred in Yankton. Noah was with me. Noah was at our home several days on a visit and settling up. Immediately after this conversation we went and executed the deed. After we had executed this deed and the notes had been surrendered to me, we had a talk with reference to the land that I might inherit from my father in La Salle county, Illinois. He wished my interest in the real and personal property that might come to me from my father's estate. I said: 'I will not give you the personal property, but will give you the other as security.' That was put in as security, as having the force and effect of a mortgage. He had allowed me a fair price for my Dakota land, but was not

certain that it would be worth what I would be owing him, computing interest up to the time that father died, so he wished this paper that I gave him as protection in case the property at father's death was not worth as much as the principal and interest up to that time. He said, furthermore, if there was anything over what would be really coming to him he would pay it back, he did not want any more than enough to pay the debt and interest. After having this conversation we entered into the contract upon which this suit is instituted."

On cross-examination he said:

" The note for $1687 was made in Yankton. It is not in my handwriting. I gave to secure that note a mortgage on my home where I live in Yankton. It was afterwards released when we made the settlement in July, 1879. I made no payments on the note prior to July, 1879, nor on the $360. My home, at the time I gave the mortgage, ought to have been worth $2000. * * * I told Mr. Harris that I had arranged with Noah to let him have that half section of land, and I wished to deed it to him, and wanted him to draw the deed. He drew the deed, only Mr. Harris, my brother and I present at that time. When this was done, Mr. Harris wrote on the back of the two notes 'paid in full, July 5, 1879.'

"Mortgage did not include any other property than my residence. At the time of the settlement my brother released that mortgage, July 5, 1879. After all that was done, then something was said about what I should get from my father's estate in La Salle county, Illinois. At that time my brother said that the land there (Dakota), as the land there might not be worth enough to satisfy his just claim against me at the time father would die, or might not satisfy his just claim against me, he wished me to give him this release obligation, as I have called it, a quitclaim of my interest. * * * This contract was taken to make the land good, to make the half section good, when it come to be sold, for what I owed him. As he had taken the half section in full settlement, not

being certain that it would be enough at the time of father's death to satisfy fully his claim, for which that had been received by him and given by me, or sold by me to him, he took this contract with reference to my interest in father's real estate so that it would make up any deficiency, having the force and effect of a mortgage. The half section of land was to be sold at the time of my father's death. No time set, but that was the time as I understand it."

The substance and effect of all this may be paraphrased thus : Charles W. was indebted to Noah S. by his two promissory notes, one dated October 12, 1872, payable twelve months after date, for $360, and the other dated February 21, 1872, payable March 15, 1873, for $1687. Both bore interest at the rate of ten per cent per annum, and the latter was secured by mortgage on a house and lot, the homestead of Charles W., in Yankton, Dakota, of the value of $2000. No payments of principal or interest having been made on either note, in July, 1879, the parties had a settlement, and then agreed that Charles W. should convey, by warranty deed, to Noah S. a half section of land in Dakota, which Noah S. should accept in payment of the amount due upon these notes. This agreement was executed on both sides, the conveyance was made, the notes were marked paid and surrendered to Charles W., and the mortgage on the homestead of Charles W. in Yankton, securing the payment of the larger note, was released on the record thereof. Plainly then Charles W. owed Noah S. nothing. Thereafter Noah S. could have maintained no suit against Charles W. on the notes, for they had been paid and surrendered. There was no subsequent indebtedness incurred by Charles W. to Noah S., and Charles W. was indebted to him on no other or different account. Then, after this indebtedness was thus paid, it was agreed between the parties that Charles W. should convey whatever interest he might have in their father's estate to secure Noah S. against loss on account of the Dakota lands which he had taken in payment. The transactions thus appear

to have been entirely distinct, and the security is not taken for an existing indebtedness, but as against a loss where there was no legal liability in the event of loss; in short, the agreement to make the conveyance is purely voluntary, and without any consideration. The other evidence introduced on behalf of appellants has no tendency to prove that the original indebtedness from Charles W. to Noah S. was kept alive after the conveyance of the Dakota land, but its tendency is directly to the reverse. Thus William Laning testified: "He"— that is, Noah S. — "came to my house on a visit, and he told me that he had taken Charles' land down on the bottom to pay him for borrowed money that he had borrowed of him some years before.

He said that the land — he did not know whether it would be worth as much if it was sold right then as the debt would amount to or not, but he said it would soon be worth $15 per acre, and then it would be worth more to him than the money out at interest. He said that Charles was willing to give him other security, but he either said that he would not take anything more from Charles than the land, or that he was satisfied with the land, for he thought it would be better than the money at interest. Said that Charles was willing to give him other security, and he didn't know but what.he would let him make out some other papers, but he did not think he would ever use them, because he was satisfied that the land in a short time would be worth as much, or more, than the debt, and he was willing to take it."

On cross-examination he repeated: "In the conversation in relation.to the land he told me that he had taken the land from Charles to pay the debt that he was owing him, and that he was satisfied to take the land, although Charles was willing to give him other security in case the land did not improve in value."

The testimony of Chester Laning is, in substance, to the same effect. John W. Batcheller, son of Charles W., testified

to an admission of Noah S. to the effect that there would be something coming back to Charles W. if the Dakota land brought $25 per acre, but what amount was not stated, nor was it stated why it would be, and that assumed, too, that this agreement should be carried out.

The parol evidence is inadmissible to establish an express trust, for the statute of frauds is pleaded.

Clearly, then, the court properly refused the relief prayed in the cross-bill.

We concede that it does not follow that because relief ought not to have been granted on the cross-bill, it ought to be granted upon the original bill, for if the agreement was without any valuable consideration, received or to be received by Charles W., it cannot be specifically enforced. But the burden is upon appellants to establish that defense by clear and satisfactory evidence, and we are unable to say that the court below erred in holding that they have not done so.

In the first place, it is not pretended that there was either fraud, accident, or mistake in executing this instrument. Charles W. does not pretend that he did not knowingly sign it, or that he was by artifice prevented from knowing what he was signing. Why was it not made to speak the truth as respects the purpose for which it was executed? Charles W. gives no explanation.

Charles W., his son, John W., and Noah S. Batcheller, each testified orally before the chancellor, and so he had those opportunities of judging of the relative truthfulness of witnesses which are afforded by an oral examination — and they are denied us. To justify us in reversing this decree, therefore, we must not only find that it is not sustained by a preponderance of the testimony recited in the record,— but this, after making due allowance for the effect of whatever there may have been peculiar in the giving of the oral testimony that might have legitimately affected the credibility of the several witnesses with the chancellor.

To our minds, the story told by Noah S. has more inherent probability of truthfulness than that told by Charles W.

Not being convinced that the decree granting the prayer of the original bill is contrary to the preponderance of the evidence, the decree is affirmed.

*Decree affirmed.*